**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Telesaurus VPC, LLC, ) | No. CV-07-1311-PHX-NVW |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| Randy Power, an individual; Patricia A. ) Power, an individual; RadioLink ) Corporation, ) | |
| Defendants. ) | |

Plaintiff Telesaurus VPC, LLC ("Telesaurus") filed this diversity suit against Radiolink Corp. ("Radiolink"), Randy Power, and Patricia Power (collectively, "Defendants") alleging violations of the Communications Act, 47 U.S.C. § 151 *et seq.*, as well as various state-law causes of action. Telesaurus claims that Radiolink knowingly obtained a license to use radio frequencies that had already been licensed to Telesaurus ("the Disputed Frequencies"). Although the Federal Communications Commission ("FCC") deleted the frequencies from Radiolink's license, Telesaurus seeks damages from Radiolink. Defendants have filed a Motion to Dismiss the action for failure to state a claim under Fed. R. Civ. P. 12(b)(6). (Doc. # 67). Because Telesaurus states no cause of action under federal law and because the state claims are preempted, Defendants' motion will be granted.

## I. Allegations and Administrative History

When a defendant moves to dismiss for failure to state a claim, factual allegations contained in the complaint are taken as true. *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007). Though in general a district court may not look beyond the four corners of the complaint at this stage, additional facts may be considered if they are judicially noticeable. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994). "Reports and records of administrative bodies . . . clearly constitute such materials." *Id.* In addition, the Court is "not bound by allegations that are clearly unsupported and unsupportable," or allegations "that are in conflict with facts judicially known to the Court." *Blackburn v. Fisk Univ.*, 443 F.2d 121, 123 (6th Cir. 1971); *accord Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Accordingly, the court will take judicial notice of administrative records and reports submitted to the court, including orders issued by the FCC, Radiolink's April 1999 application for an FCC license, and the license that was issued.[1] The court takes no notice of private correspondence or other non-administrative documents. The relevant allegations and judicially noticed facts are summarized as follows.

The FCC has designated certain radio frequencies for VHF Public Coast ("VPC") radio service, including the Disputed Frequencies. Since 1999, Telesaurus has been in the business of obtaining licenses for this group of radio frequencies. Telesaurus then develops businesses to provide new wireless communications services using these licenses in Arizona.

---

[1] Defendants argue that this Court should not take judicial notice of the application and radio license or the radio license itself. The thrust of this argument is not entirely clear. As Defendants acknowledge, the court may judicially notice the content of forms submitted to government agencies without ruling on the truth of that content. *See Patel v. Parnes*, 253 F.R.D. 531, 544-46 (C.D. Cal. 2008). Moreover, the application in question also appears (albeit without electronic signature) as an attachment to Radiolink's Petition for Reconsideration of the FCC's order, which both parties have stipulated is admissible. The operative statements in the license itself are consistent with the FCC's subsequent orders.

In 1999, Radiolink competed with Warren Havens (Telesaurus's predecessor in interest) in a public FCC auction to obtain licenses for certain VPC frequencies, including the Disputed Frequencies. Radiolink was outbid, and Havens won the auction. Soon after the auction took place, Radiolink submitted a sworn application to the FCC to obtain numerous VPC frequencies, including most of the VPC frequencies that Warren Havens won at auction. The FCC granted Radiolink's application. At that time, then, two parties possessed a license to use the Disputed Frequencies.

In the years to follow, Defendants used those frequencies for two-way radio service, charging various customers for use of mountain-top and other repeater sites to provide wireless communication in the Phoenix area. Warren Havens assigned his licenses to Telesaurus, but there is no allegation that Telesaurus or Havens made any other use of the Disputed Frequencies during this time. Nonetheless, while exploring business opportunities, Telesaurus eventually learned of the conflicting licenses and reported the issue to the FCC.

The FCC soon resolved the conflict. In 2004, it issued an order proposing to delete the Disputed Frequencies from Radiolink's license. Memorandum Opinion and Order, *In re Radiolink Corp.*, DA 04-573 (F.C.C. 2004) (hereinafter "MO&O"). In 2005, the FCC modified Radiolink's licenses by deleting the frequencies at issue in this case. Order of Modification, *In re Radiolink Corp.*, DA 05-1954, at 1 (F.C.C. 2005) (hereinafter "OOM"). It ordered no additional sanction against Radiolink or damages in favor of Telesaurus. To the contrary, the FCC granted Radiolink's request to add replacement channels to "minimize the impact of this action on Radiolink's operations." OOM at 3.

Telesaurus now seeks monetary relief against Radiolink, citing federal and state causes of action. Telesaurus claims that "Defendant's unlawful obtaining and maintaining of the [frequencies] . . . blocked Plaintiff from pursuit of the Havens LLCs [sic] business plan, noted above, and specific other valuable business opportunities centered in Phoenix and extending over several states (in which Plaintiff held the same VPC class of FCC licenses), for years, until the FCC eventually returned them to Plaintiff."

### III. Analysis

Telesaurus alleges several causes of action. The first is alleged to arise under provisions of the Communications Act, 47 U.S.C. § 206–207. The second, third, and fourth claims allege state causes of action for conversion, unjust enrichment, and intentional interference with prospective economic advantage, respectively. As a preliminary matter, the Court notes that this suit was brought as a diversity action. The Court therefore has independent grounds for jurisdiction over the state law claims even though the federal cause of action will be dismissed. There is no need to undertake an inquiry into preemption-based federal question jurisdiction under *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003), or discretionary supplemental jurisdiction under 28 U.S.C. § 1367(c)(3).

#### A. The Communications Act

Telesaurus claims that the Defendants knowingly violated numerous provisions of the Communications Act "by submitting and prosecuting and obtaining a grant of a fraudulent application to the FCC to obtain and use" the Disputed Frequencies. It claims that these acts violate 47 U.S.C. §§ 301, 308, 309, 312(a), and 503(b). It goes on to claim that a private remedy exists for these alleged wrongs under 47 U.S.C. § 206 and 207. This last step is the one Telesaurus cannot take, however, because Telesaurus has no such right of action. The plain language of the statute only permits an action in this nature against a common carrier, and Radiolink falls outside this category.

The text of 47 U.S.C. § 206 requires this limitation. "In case any common carrier shall do, or cause or permit to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this chapter required to be done, such common carrier shall be liable to the person or persons injured . . . ." Elsewhere in the Communications Act, "common carrier" is defined as "any person engaged as a common carrier for hire, in interstate or foreign communication by wire or radio or in interstate or foreign radio transmission of energy . . . ." 47 U.S.C. § 153(10).

In the mobile radio context, the Communications Act has recognized two different categories of service: Commercial Mobile Radio Service ("CMRS") and private mobile

- 4 -

1 services, including Private Land Mobile Radio ("PLMR"). The term CMRS includes mobile
2 services operated for profit, offered to the public, and interconnected with the public
3 switched network. *See* 47 U.S.C. § 332(d)(1) & (2). Private mobile services include all
4 wireless services that do not meet the definition for CMRS. *Id.* § 332(d)(3). The statute
5 further provides that "[a] person engaged in the provision of a service that is a private mobile
6 service shall not, insofar as such person is so engaged, be treated as a common carrier for any
7 purpose under this [C]hapter [5]." 47 U.S.C.A. § 332(c)(2).[2]

The administrative orders in this case and Radiolink's license itself show that the frequencies at issue were licensed to Radiolink as a PLMR station. MO&O at 1; OOM at 1. The statutory definition of "common carrier" excludes private mobile radio services. Thus, according to the FCC's conclusion, Radiolink cannot be considered a common carrier. Because the private right of action under 47 U.S.C. §§ 206–207 only exists against common carriers, Telesaurus may not sue Radiolink under these provisions. Telesaurus has failed to state a claim under federal law.

Telesaurus claims that Radiolink was nonetheless a common carrier subject to suit. Telesaurus points out that the frequencies at issue were, at relevant times, unavailable for PLMR licensing. *See* Amendment of the Commission's Rules Concerning Maritime Communications, 13 F.C.C.R. 19853, 19871 ¶ 36, 19912 ¶ 75 (July 9, 1998) (third report and order and memorandum opinion and order). Therefore, the argument goes, Radiolink must have been a common carrier, and therefore subject to suit, when it obtained its license to the Disputed Frequencies.

Such reasoning misses the point of the FCC's orders. Radiolink's FCC license indicates a PLMR regulatory status. When the FCC deleted the frequencies at issue from Radiolink's license, its orders repeatedly confirmed that Radiolink had received a license for a PLMR station. The FCC deleted the frequencies citing the fact that VPC spectrum should

---

[2] Chapter 5 of the Communications Act spans sections 151 to 615b, including all the provisions Telesaurus seeks to invoke.

- 5 -

not have been licensed to a PLMR entity. There was no issue as to Radiolink's status as a PLMR license holder. In fact, that status was the primary reason for the deletion. Telesaurus suggests that the frequencies themselves connote common carriage, and that Radiolink never obtained approval to use the frequencies as PLMR frequencies. This argument clashes with the administrative record. It amounts to a bare challenge to FCC action—the designation of Radiolink as a PLMR entity—without any explanation of how that action runs afoul of the principles laid down in *Chevron U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984). The regulations Telesaurus cites, 47 C.F.R. §§ 20.3 and 20.9, do not support Telesaurus's conclusory assertion.

Telesaurus therefore states no claim under 47 U.S.C. §§ 206–207.

### B. State Law Claims

In addition to its federal claim, Telesaurus also alleges that Radiolink's actions amounted to conversion, unjust enrichment, and intentional interference with prospective economic advantage. These state-law claims must be dismissed because they are preempted by the Communications Act.

The Communications Act contains the following express preemption provision:

> Notwithstanding sections 152(b) and 221(b) of this title, no State or local government shall have any authority to regulate the entry of or the rates charged by any commercial mobile service or any private mobile service, except that this paragraph shall not prohibit a State from regulating the other terms and conditions of commercial mobile services.

47 U.S.C. § 332(c)(3)(A). Another provision, the Act's savings clause, reads, "Nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." 47 U.S.C. § 414. The question then arises, which language is meant to encompass the causes of action in a case such as this, the express preemption language or the language that limits it?

Examination of the Communications Act preemption doctrine compels the conclusion that the Communications Act expressly preempts these causes of action. Telesaurus, a private party, has sued another private party for obtaining a license from the FCC. Though

- 6 -

1 that license was later revoked, the grant and revocation of the license lay entirely within the
2 FCC's purview as the master of radio market entry. Telesaurus cites no authority holding
3 that a party may be liable at common law for the FCC's actions. The allegations of fraud in
4 this case do nothing to alter this conclusion. Contrary to Telesaurus's claim, Radiolink's
5 FCC application for and the subsequent deletion of the disputed frequencies is consistent
6 with Radiolink's PLMR status. The application contains no representation concerning the
7 availability of the frequencies at issue.

8 It is true that the savings clause, 47 U.S.C. § 414, appears to sweep broadly, stating
9 that Chapter 5 of the Communications Act cannot abridge any state law remedies. This
10 clause has been held to preserve many state causes of action, but to interpret it absolutely
11 would be to eviscerate the Communications Act itself. As the Seventh Circuit has noted,
12 broad interpretations of savings clauses in common carrier statutes must be rejected if they
13 would "empower state courts to gut the federal regulatory scheme or would place the carrier
14 under inconsistent obligations." *Cahnmann v. Sprint Corp.*, 133 F.3d 484, 488 (7th Cir.
15 1998) (collecting Supreme Court cases). Telesaurus runs afoul of this doctrine here because
16 it tries, through its claims, "to regulate the entry of or the rates charged by . . . [a] private
17 mobile service." 47 U.S.C. § 332(c)(3)(A).

18 The practicalities of FCC power inform this conclusion. Although "[t]he presence of
19 an express preemption provision supports an inference that Congress did not intend to
20 preempt matters *beyond* the reach of that provision," it is also true that "deciding exactly
21 *what* Congress meant to preempt often resembles an exercise in implied preemption
22 analysis." *Metrophones Telecomms., Inc. v. Global Crossing Telecomms., Inc.*, 423 F.3d
23 1056, 1072 (9th Cir. 2005) (quoting, in the second instance, 1 Laurence H. Tribe, *American
24 Constitutional Law* § 6-28, at 1177 (3d ed. 2000)). Principles of implied preemption are
25 therefore relevant. "Under field preemption, preemption is implied when Congress so
26 thoroughly occupies a legislative field, that it effectively leaves no room for states to regulate
27 conduct in that field. Under conflict preemption, Congress's intent to preempt state law is
28 implied to the extent that federal law actually conflicts with any state law." *Whistler Invs.,*

1 *Inc. v. Depository Tr. & Clearing Corp.*, 539 F.3d 1159 (9th Cir. 2008) (internal quotation
2 marks and citations omitted).

3       In the sphere of radio communications, the FCC regulates market entry by allocating
4 frequencies to prospective market participants. "It is the purpose of [Chapter 5], among other
5 things, to maintain the control of the United States over all the channels of radio
6 transmission; and to provide for the use of such channels, but not the ownership thereof, by
7 persons for limited periods of time, under licenses granted by Federal authority . . . ." 47
8 U.S.C. § 301; *see also id.* § 303 (granting the FCC authority to manage the radio spectrum
9 "as the public interest, convenience, or necessity requires"). As the preemption statute
10 shows, this authority also extends to regulation of rates. *See id.* § 332(c)(3)(A). The state
11 claims in this case conflict with both areas of the FCC's core responsibility. *See Cahnmann*,
12 133 F.3d at 488 (discussing primary jurisdiction with respect to tariffs).

13       The administrative record makes plain that the original grant of a license to Radiolink
14 was improper, but the FCC remedied that problem according to its own regulatory wisdom.
15 It deleted the conflicting frequencies and granted replacement frequencies to Radiolink. No
16 sanctions were visited on Radiolink, nor did the FCC see fit to order any compensation paid
17 to Telesaurus for Radiolink's use of the radio spectrum. The Court declines to contravene
18 the FCC's measured decision regarding market entry by reaching the merits of this civil suit
19 between the regulated entities.

20       Not only does this case contest the practicalities of market entry. The damages claims
21 also implicitly seek to set a value on the frequencies at issue, using state law principles to
22 usurp the rate setting function that is the exclusive province of the FCC. *See Sprint PCS*, 17
23 F.C.C.R. 13192, 13198 n.40 (2002) (noting in dictum that a judicial award for unjust
24 enrichment arising out of regulated services may impermissibly encroach upon rate-setting
25 authority); *see also AT&T Corp. v. F.C.C.*, 349 F.3d 692, 701 (D.C. Cir. 2003) ("[T]he
26 agency left little room for confusion on this point, strongly suggesting that a claim based on
27 quantum meruit would be preempted."). Contrary cases cited by Telesaurus are not on point,
28 involving acts that do not directly implicate rates and market entry. *See, e.g.*, *Fin. Planning*

1 *Inst. Inc. v. AT&T Co.*, 788 F. Supp. 75 (1992) (independent breach of contract); *In re Conn. Mobilecom, Inc. v. Cellco P'ship*, No. 02-12725 REG, 02-02519 WHP, 2003 WL 23021959, at *1 (S.D.N.Y. 2003) (defamation, unfair competition, and theft of customers); *Moriconi v. AT&T Wireless PCS, LLC*, 280 F. Supp. 2d 867 (E.D. Ark. 2003) (consumer fraud action with no challenge to rates).

Finally, though the parties have not argued the point, the Court notes that this lawsuit implicates Constitutional questions. The First Amendment protects the right to petition government, a protection which extends to administrative filings such as Radiolink's FCC license application. *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972). This so-called *Noerr-Pennington* doctrine was originally a shield against antitrust actions arising out of petitioning activities, but "it is equally applicable to many types of claims which seek[ ] to assign liability on the basis of the defendant's exercise of its first amendment rights." *Cent. Telecomms., Inc. v. TCI Cablevision, Inc.*, 800 F.2d 711, 717 n.7 (8th Cir. 1986) (quoting district court opinion) (alteration original) (noting Supreme Court's agreement with this position); *accord Theme Promotions, Inc. v. News Am. Marketing FSI*, 546 F.3d 991, 1007 (9th Cir. 2008) (extending *Noerr-Pennington* doctrine to state-law intentional interference claims); *cf. Restatement (Second) of Torts* § 674 (setting forth a high bar to claims of wrongful litigation). The *Noerr-Pennington* doctrine does not protect "sham" petitions. *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 932 (9th Cir. 2006). At the same time, "[i]n order not to chill legitimate lobbying activities, it is important that a plaintiff's complaint contain specific allegations demonstrating that the *Noerr-Pennington* protections do not apply." *Boone v. Redevelopment Agency of the City of San Jose*, 841 F.2d 886, 894 (9th Cir. 1988). The parties have not briefed whether and to what extent the *Noerr-Pennington* doctrine applies in this case, and there is no need to address it where, as here, other grounds for dismissal exist.

Telesaurus's stumble is not one from which it can recover and return to the race. It would be fruitless to let Telesaurus try again by allowing further amendment of its complaint.

1  The complaint and the action will be dismissed with prejudice. The third party claims must
2  also be dismissed, for the Defendants have no liability to cast off to others.
3       IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss for failure to
4  state a claim (doc. # 67) is granted.
5       IT IS FURTHER ORDERED that the Clerk enter judgment dismissing this action
6  with prejudice and dismissing the third-party claims as moot. The Clerk shall terminate the
7  case.
8       DATED this 4th day of February, 2009.

_____
Neil V. Wake
United States District Judge