**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Telesaurus VPC, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>Randy Power, an individual; Patricia Power, an individual; Radiolink Corporation, an Arizona corporation; and commonly-controlled and affiliated entities,<br><br>Defendants. | No. CV 07-01311-PHX-NVW<br><br>**ORDER** |

Before the Court is the "Motion to Dismiss Defendant Patricia Power" (Doc. 150). For the reasons stated below, the Court will grant the motion.

**I.    BACKGROUND**

In 1998, Telesaurus (through its predecessor-in-interest, Warren Havens) and RadioLink both participated in an FCC auction for certain radio frequencies in the Phoenix area designated as VHF Public Coast, or "VPC," frequencies. Telesaurus won the auction, but RadioLink soon gained access to the frequencies anyway by allegedly "submit[ting] to the FCC a false application . . . falsely characterizing [five of Telesaurus's VPC frequencies] as frequencies in a certain pool of frequencies (very close in frequency range to the VPC Frequencies) that the FCC set aside for licensing at no charge, on a first-come, first-serve basis." (Doc. 120 ¶ 15.)  The FCC granted

RadioLink's application, and RadioLink purportedly began using those frequencies "for a common carrier Wireless Telecommunication Service and Commercial Mobile Radio Service." (*Id.* ¶ 16.)

Telesaurus claims that —

> in the course of attempting to find companies involved in the wireless communications in the Phoenix area to partner with in order to build and operate wireless facilities using the VPC Frequencies . . . [Telesaurus was] informed that the VPC Frequencies, or some of them, were already in use by [RadioLink]. After being so informed a number of times, [Telesaurus] investigated the matter, found it was true, and reported it to the FCC for enforcement action.

(*Id.* ¶ 17.) On July 7, 2005, the FCC cancelled the disputed VPC frequencies from RadioLink's license.

Telesaurus hoped to hold RadioLink liable for violation of Federal Communications Act (FCA) provisions governing use of the disputed radio frequencies. The limitations period for private suits under the FCA is two years.[1] The parties agree that Telesaurus's cause of action accrued on July 7, 2005, and the statute of limitations expired on July 7, 2007.

---

[1] The two-year statute of limitations comes from 47 U.S.C. § 415(b), which states: "All complaints against carriers for the recovery of damages not based on overcharges shall be filed with the Commission within two years from the time the cause of action accrues . . . ." Obviously, this language refers only to complaints filed with the FCC, but the Ninth Circuit has held that it applies to complaints filed in federal court as well. *Pavlak v. Church*, 727 F.2d 1425, 1428–29 (9th Cir. 1984). Telesaurus argues that *Pavlak* has been effectively overruled by later cases (in other contexts) emphasizing statutory construction principles such as avoiding a construction that makes certain language superfluous. Telesaurus's argument is without merit. Cases about statutory construction generally cannot overrule the specific construction given in *Pavlak*. In addition, *Pavlak* makes sense in light of 47 U.S.C. § 207, which permits parties to bring FCA-based complaints to the FCC or to a district court, but not both. Given this mutual exclusivity, it would make little sense for a two-year limitation to apply to actions filed with the FCC but some other time period for actions filed in district court. Finally, Telesaurus has not offered an alternative limitations period. Accordingly, the two-year statute of limitations applies in this case.

One day ahead of the expiration date, Telesaurus filed this suit, naming RadioLink and Randy Power as defendants. On October 10, 2008, Telesaurus filed an amended complaint, adding Patricia Power, Randy Power's ex-wife, as a defendant. Telesaurus never served Ms. Power with that complaint.

This Court eventually dismissed Telesaurus's complaint. The Ninth Circuit affirmed but granted Telesaurus an opportunity to amend its FCA cause of action. Telesaurus filed its second amended complaint — the currently operative complaint — on January 27, 2011. It served Ms. Power with that complaint on April 29, 2011.

## II.   ANALYSIS

Ms. Power argues that the two-year statute of limitations has run with respect to Telesaurus's Federal Communications Act claim against her. The parties do not dispute that: (1) the statute of limitations expired on July 7, 2007, (2) Ms. Power was not named as a defendant until October 10, 2008, and (3) Telesaurus did not serve Ms. Power with any version of the complaint until April 29, 2011. On these facts, the statute of limitations has obviously run. Therefore, Telesaurus cannot state a claim against Ms. Power unless Telesaurus can "relate" the second amended complaint back to the date of Telesaurus's first complaint, July 6, 2007, filed one day before the statute of limitations expired.

### A.   Rule 15(c)(1)(C) Generally

The parties agree that the following portion of Federal Rule of Civil Procedure 15(c) governs "relation back" in this context:

> (1) *When an Amendment Relates Back.* An amendment to a pleading relates back to the date of the original pleading when:
>
> \* \* \*
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied ["the amendment asserts a claim or

> defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading"] and if, within the period provided by Rule 4(m) for serving the summons and complaint [120 days from the filing of the original complaint], the party to be brought in by amendment:
>
> > (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> >
> > (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Distilled, this Rule establishes four elements: (1) the amendment changes the party or the naming of the party against whom a claim is asserted; (2) Rule 15(c)(1)(B) is satisfied, meaning that the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading; (3) within 120 days from the filing of the original complaint, the party to be brought in by amendment received such notice of the action that it will not be prejudiced in defending on the merits; and (4) within 120 days from the filing of the original complaint, the party to be brought in by amendment knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

### B.   Rule 15(c)(1)(C)'s "Change" Requirement

The outcome of Ms. Power's motion turns on the first element — whether Telesaurus's amended pleading "changes the party or the naming of the party against whom a claim is asserted." On its face, this language permits only substitution, not addition, of parties. Telesaurus seeks to add Ms. Power, not substitute her for a pre-existing defendant. Therefore, by the language of the Rule, Telesaurus's claims against Ms. Power do not relate back.

Nevertheless, courts are split over whether Rule 15(c)(1)(C)'s "chang[ing] the party" language should be read so strictly. *See* 6A Charles Alan Wright et al., *Federal*

*Practice & Procedure* § 1498.2 nn.1–2 (2010) (collecting cases) (hereafter, "*Wright & Miller*"). No Ninth Circuit authority squarely addresses the issue. Ms. Power points to *Lewis v. Lewis*, 358 F.2d 495, 502 (9th Cir. 1966), where the Ninth Circuit stated that "under [Rule 15(c)], an amended pleading does not relate back insofar as it states claims against newly-joined defendants." But *Lewis* was handed down three-and-a-half months too early for Ms. Power's purposes. *Lewis* is dated March 14, 1966, at which time Rule 15(c) read as follows: "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." 28 U.S.C. App., at 6097 (1964 ed.). This version speaks only of amendments adding new claims, not amendments adding new parties. The current version of Rule 15(c) — with specific language about amendments "chang[ing]" parties — became effective on July 1, 1966. 28 U.S.C. App. Supp. III, at 1598 (1968). Thus, *Lewis*'s interpretation of Rule 15(c) cannot be viewed as a reliable interpretation of Rule 15(c) as it currently stands.

But even absent *Lewis*, Ms. Power's interpretation prevails over Telesaurus's because Ms. Power's is the only reading supported by both the language and the expressed purpose of the rule. Regarding the Rule's language, Ms. Power's reading comports with the requirement that relation back may happen only when the new party "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(ii). "Proper party" necessarily implies an "improper party," not simply some other party.

Regarding the Rule's purpose, the Rules Committee's commentary to the 1966 amendment demonstrates that "chang[ing] the party or the naming of the party against whom a claim is asserted" means precisely what it says: redirecting an existing claim toward a different party, and dropping the original party. The main driver behind the 1966 amendment was lawsuits against the federal government where the plaintiff mistakenly named to the wrong officer or agency. *See* Fed. R. Civ. P. 15, Advisory Committee Notes to 1966 Amendments. A plaintiff who realized the mistake after the

- 5 -

1. statute of limitations had run often faced a tough-luck dismissal from the district court, given that Rule 15(c) as then written addressed only amendments affecting claims, rather than parties.  The Rules Committee intended the 1966 amendment to correct this problem, allowing the plaintiff to substitute the proper party.  The Committee specifically characterized the amendment as the defendant-oriented analog to Fed. R. Civ. P. 17(a)'s plaintiff-oriented real party in interest rules.  *See id.*

The 1966 amendment to Rule 15(c) — what is now Rule 15(c)(1)(C) — is "intimately connected with the policy of the statute of limitations," Fed. R. Civ. P. 15, Advisory Committee Notes to 1966 Amendments, and strikes a balance between letting stale claims die and enforcing such claims against a defendant whom the plaintiff failed to timely sue because the plaintiff mistakenly believed that some other party caused the alleged injury.  Thus, Rule 15(c)(1)(C) imagines the proper defendant in the shoes of the improper defendant.  When the plaintiff filed its complaint against the improper defendant, Rule 4(m) required service of process within 120 days.  Rule 15(c)(1)(C) asks, did the proper defendant receive, within the same 120 days, an effective substitute for service of process (*i.e.*, "such notice of the action that it will not be prejudiced in defending on the merits," Fed. R. Civ. P. 15(c)(1)(C)(i))?  If so, then did that proper defendant know, or should it have known, that the plaintiff would have sued it had the plaintiff not made a mistake about the identity of the person or entity responsible for its injuries (*see* Fed. R. Civ. P. 15(c)(1)(C)(ii))?  If so, then the policy of the statute of limitations is satisfied, and the proper defendant should not benefit from the plaintiff's innocent mistake — all too easy to make in the modern world of convoluted business, ownership, supervisory, and administrative arrangements.

Rule 15(c)(1)(C)'s placement of the proper defendant into the improper defendant's shoes has no relation to a scenario where the plaintiff wants to bring in an additional party.  Thus, Telesaurus's interpretation of the Rule has no basis in its text or policies.

### C. Other Interpretations of "Change"

Telesaurus, however, has one venerable authority on its side: *Wright & Miller*. Acknowledging that "change" vs. "add" is an "important question," *Wright & Miller* cites cases going both ways, *see* 6A *Wright & Miller* § 1498.2 nn.1–2, and declares that "[t]he better practice . . . is to determine the propriety of the amendment in light of the Rule 15(c) notice requirements," *id.* § 1498.2.[2] As an example, *Wright & Miller* refers to a case in which the original defendant impleaded a third party and the plaintiff sought to amend so that it could make the third party a first party defendant because "there was uncertainty as to which of the two [defendants] was liable for the injury." *Id.* The treatise then goes on to suggest:

> If both the basic transaction test [*i.e.*, the requirement that "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading," Fed. R. Civ. P. 15(c)(1)(B)] and the notice requirement of Rule 15(c) [*i.e.*, that, within 120 days of the original complaint, the prospective defendant "received . . . notice of the action" and "knew or should have known" that it was "the proper party," *id.* 15(c)(1)(B)(i)–(ii)] are satisfied, there is no justification for a restrictive interpretation of the word "changing" that would require a plaintiff to choose among defendants. Too narrow a reading of the rule might result in the release of a party who ultimately might have proven to be liable and who would not have been prejudiced in the defense on the merits by its addition as another defendant.

*Id.*

---

[2] *Moore's Federal Practice* also appears to support Telesaurus's position. Without acknowledging the dispute over "change" vs. "add," *Moore's* declares: "Rule 15 expressly allows amended pleadings that change or add parties to relate back." 3 James Wm. Moore et al., *Moore's Federal Practice* § 15.19[3][a] (3d ed. 2010) (citing Fed. R. Civ. P. 15(c)(1)(C)). But Rule 15 "expressly" refers only to change, not addition. And as discussed below, "add" is not a subset of "change" in the context of Rule 15(c)(1)(C).

- 7 -

This is an example of a borderline case between changing or adding a party, which may favor allowing the amendment, perhaps conditioned on subsequent facts establishing which party is the proper party. But it is a poor argument for altogether throwing down the boundary between "change" and "add," as Telesaurus must do in this case.

Moreover, *Wright & Miller*'s approach unjustifiably dilutes Rule 15(c)(1)(C). A recommendation that "[t]he better practice . . . is to determine the propriety of the amendment in light of the Rule 15(c) notice requirements," is effectively a recommendation to treat the Rules' requirements as factors to be weighed, not requirements. Nothing in the text of the rule or the Rules Committee's commentary supports this approach. By contrast, the Supreme Court has made clear that Rule 15(c) establishes elements, the satisfaction of which necessarily merits leave to amend; the district courts do not have discretion as they do under Rule 15(a). *Krupski v. Costa Crociere S. p. A.*, __ U.S. __, __, 130 S. Ct. 2485, 2496 (2010). Treating those elements as no more than factors to weigh would undercut the Rule's non-discretionary nature.

Many of the cases cited in *Wright & Miller* do not support its position, or do so only in dictum. A fair number of these cases involve pure substitution without mention of addition. *See Joseph v. Elan Motorsports Techs. Racing Corp.*, 638 F.3d 555, 557 (7th Cir. 2011) ("Elan Motorsports Technologies Racing Corp." substituted for "Elan Motorsports Technologies, Inc."); *Marks v. Prattco, Inc.*, 607 F.2d 1153, 1156 (5th Cir. 1979) (owner of property substituted for the property itself); *Bush v. Sumitomo Bank & Trust Co., Ltd.*, 513 F. Supp. 1051, 1054 (E.D. Tex. 1981) (actual owner of ship substituted for party mistakenly thought to own the ship). Certain other cases casually mention the possibility of adding, but nonetheless substitute. *Williams v. Doyle*, 494 F. Supp. 2d 1019, 1029–31 (W.D. Wis. 2007) (substituting state department for state itself); *Ocasio Ortiz v. Betancourt Lebron*, 146 F.R.D. 34, 38 (D.P.R. 1992) (substituting real persons for John Doe defendants); *Ratcliffe v. Ins. Co. of N. Am.*, 482 F. Supp. 759, 761 (E.D. Pa. 1980) (substituting an insurance company and its subsidiaries for a nonexistent entity).

A few decisions permit actual addition, but most of these simply add parties without addressing the "change" vs. "add" distinction. *Abdell v. City of New York*, 759 F. Supp. 2d 450, 454 (S.D.N.Y. 2010); *Colombo v. Suffolk County Dept. of Soc. Servs.*, 221 F.R.D. 374, 376 (E.D.N.Y. 2004); *Gabriel v. Kent Gen. Hosp. Inc.*, 95 F.R.D. 391, 393 (D. Del. 1982). In one other case, the court acknowledged the difference but swept it away with a footnoted citation to *Wright & Miller*. *Advanced Power Sys., Inc. v. Hi-Tech Sys., Inc.*, 801 F. Supp. 1450, 1456 n.5 (E.D. Pa. 1992) ("The word 'changing' has been liberally construed to cover amended pleadings that, as this one, add entirely new parties without any substitution." (citing 1990 edition)). Accordingly, these cases have little to say for or against the substitution/addition dispute.

One of the few cases to confront the question directly is *Goodman v. Praxair, Inc.*, 494 F.3d 458 (4th Cir. 2007), although answering it was not essential to that case. There, Goodman first sued Praxair Inc. Then, after the statute of limitations had run, Goodman moved to substitute the indisputably proper party — Praxair Services, Inc. — for Praxair. But Goodman *also* wanted to keep Praxair in the case on an newly pleaded alter ego theory. For unclear reasons, the district court characterized the swap of Praxair Services for Praxair as "adding" rather than "changing," and would not allow it based on Rule 15(c)(1)(C)'s plain language. *Id.* at 463.

Reversing, the Fourth Circuit noted that the situation amounted to substitution, given that the claims asserted against Praxair had been redirected toward Praxair Services, and Praxair remained in the case on a different theory only. *Id.* at 468–69. The Court could have stopped there, but instead pressed on to the "change" vs. "add" question, agreeing with *Wright & Miller* that Rule 15(c)(1)(C)'s only real requirement is proper notice to the new defendant. *Id.* at 469. "Because no [statute of] limitations policy is at stake in the interpretation of 'changes,' the liberal amendment policy of the federal rules becomes paramount." *Id.*; *see also Meredith v. United Air Lines*, 41 F.R.D. 34, 39 (S.D. Cal. 1966) ("The word 'changing' must be given a sensible and practical construction. It would be unfair indeed to deny Plaintiff the benefits of Rule 15(c) as

- 9 -

1   amended, merely because her counsel, in the necessary protection of her interests, have
2   not substituted Lockheed in place of the Government.").

3   *Goodman* is an odd case because the proper party was substituted for the improper
4   party, and then the improper party was brought back in on a separate charge. Assuming
5   Rule 15(c)(1)(C)'s elements had been satisfied as to Praxair Services, and Rule 15(a)
6   discretion was appropriate as to the Praxair/alter ego amendment, there should have been
7   no controversy over "change" vs. "add." In any event, the facts of *Goodman* do not
8   relate to the facts of this case. Ms. Power is not a substituted party in any sense.

9   Nonetheless, on its merits, *Goodman*'s analysis is suspect for the same reasons
10  that *Wright & Miller*'s analysis is suspect. Rule 15(c)(1)(C) is not a set of factors to
11  balance, with the most weight placed on the notice requirement. The Rule establishes
12  elements which are either satisfied or not. Those elements exist to ensure that statutes of
13  limitations are respected but not enforced through excusable mistake. Further,
14  *Goodman*'s nod to the "liberal amendment policy of the federal rules" — derived from
15  Rule 15(a) — has no power to trump Rule 15(c)(1)(C). As the Supreme Court more
16  recently explained, "the [narrow] inquiry for relation back under Rule 15(c) is
17  particularly striking in contrast to the inquiry under Rule 15(a)." *Krupski*, __ U.S. at __,
18  130 S. Ct. at 2496.

19  Nonetheless, some have asserted that "[a]dding a party is essentially no different
20  from changing a party," *Lundy v. Adamar of New Jersey, Inc.*, 34 F.3d 1173, 1192
21  (3d Cir. 1994) (Becker, J., concurring in judgment in part and dissenting in part), or that
22  "'an *addition* to something is generally regarded as a *change* to that thing,'" *Goodman*,
23  494 F.3d at 468 (quoting argument of counsel (emphasis in original)). In a vacuum,
24  "add" can be a subset of "change," but Rule 15's use of "change" is not in a vacuum.
25  The "change" required is a change that takes an already "asserted" claim and reassigns it
26  to a party that "knew or should have known" it was "the proper party." Fed. R. Civ. P.
27  15(c)(1)(C), (C)(ii). Accordingly, the "change" described in Rule 15(c) refers to a
28  substitution, not an addition.

Limiting Rule 15(c)(1)(C) to substitution — the only purpose for which the Rules Committee intended it — does not threaten injustice to plaintiffs. If a plaintiff truly seeks to add a new defendant after the limitations period appears to have expired, Rule 15(a) accommodates such a motion, which would likely turn on tolling doctrine. If the plaintiff waits until the limitations period has expired before seeking to bring in the prospective defendant, knowing all along that the prospective defendant contributed to its injury, the plaintiff has no excuse. If the plaintiff did not timely discover the prospective defendant's role, then the court must resolve whether the plaintiff *should have* discovered it earlier, just as it would if the plaintiff had never before asserted that claim against anyone.

Rule 15(c)(1)(C) was not intended to circumvent these principles. It establishes a narrow circumstance in which the statute of limitations is deemed satisfied: the plaintiff mistakenly sues an improper party but, within 120 days of filing, the proper party learns of the lawsuit and recognizes itself as the proper party. This does not excuse a plaintiff from due diligence in investigating its claims.

### D. Tolling

Given that Telesaurus seeks to add Ms. Power, rather than substitute her for an existing defendant, the question arises whether the statute of limitations should be tolled. *See Pavlak*, 727 F.2d at 1428–29 (tolling may apply to 47 U.S.C. § 415(b)'s statute of limitations); *see also* note 1, *supra*. Telesaurus's argument for tolling is summary and unsupported. It does not address the fact that a public document (FCC Form 175) regarding RadioLink's participation in the auction won by Telesaurus prominently features both Randy and Patricia Power as "authorized bidders" for RadioLink and lists Ms. Power as 50% owner of RadioLink. (Doc. 75-2.) Telesaurus relied on this Form 175 in its first amended complaint, when it added Ms. Power as a defendant. (*See* Doc. 48-1 ¶ 4.) Various other FCC records from 2004 or earlier also disclose Ms. Power's involvement. (*See* Doc. 160 at 8–10.) If Telesaurus had not seen these documents before

amending, it should have as it "investigated the matter" (Doc. 120 ¶ 17) sometime in late 2003 or early 2004 (*see* Docs. 61-2, 80-10, 81-1).  That was well before the statute of limitations expired on July 7, 2007.  Accordingly, no basis for tolling has been presented.

IT IS THEREFORE ORDERED that Ms. Power's "Motion to Dismiss Defendant Patricia Power" (Doc. 150) is GRANTED.  Defendant Patricia Power is DISMISSED as a party.

Dated this 21st day of October, 2011.

Neil V. Wake
United States District Judge