**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Telesaurus VPC, LLC, a Delaware limited liability company,<br><br>                    Plaintiff,<br><br>vs.<br><br>Randy Power, an individual; Patricia Power, an individual; Radiolink Corporation, an Arizona corporation; and commonly-controlled and affiliated entities,<br><br>                    Defendants. | No.  CV 07-1311-PHX-NVW<br><br>**ORDER** |

Before the Court is RadioLink's and Randy Power's Motion for Rule 11 Sanctions (Doc. 226).  For purposes of this order, RadioLink and Randy Power will be referred to collectively as "RadioLink," unless the context requires otherwise.  For the reasons discussed below, RadioLink's motion will be granted.

## I.    BACKGROUND

### A.    Genesis of This Dispute

In 1998, Telesaurus (a Delaware limited liability company, whose name has since been changed to Verde Systems) and RadioLink (an Arizona corporation) both participated in an FCC auction for certain radio frequencies in the Phoenix area designated as VHF Public Coast, or "VPC," frequencies.  RadioLink withdrew from the auction before it concluded, and Telesaurus won the auction.  RadioLink, however, soon gained access to the frequencies anyway by allegedly "submit[ting] to the FCC a false application . . . falsely characterizing [five of Telesaurus's VPC frequencies] as

frequencies in a certain pool of frequencies (very close in frequency range to the VPC Frequencies) that the FCC set aside for licensing at no charge, on a first-come, first-serve basis." (Doc. 120 ¶ 15.) RadioLink denied that it submitted a false application, and instead claimed that a frequency coordinator — a non-governmental entity that works as a sort of middleman for frequency applications — mistakenly selected the frequencies for RadioLink to request. In any event, the FCC did not realize that the requested frequencies were already assigned to Telesaurus, and it granted RadioLink's application. RadioLink began using Telesaurus's frequencies allegedly "for a common carrier Wireless Telecommunication Service and Commercial Mobile Radio Service." (*Id.* ¶ 16.) RadioLink disputed that it operated a commercial mobile radio service, instead arguing that it operated a private mobile radio service for customers such as fire departments and bus systems. The distinction between a commercial service and a private service matters because the FCC treats commercial services, but not private services, as "common carriers," 47 U.S.C. § 332(c)(1)–(2), and RadioLink's liability turns on whether or not it was a "common carrier."

Telesaurus apparently paid no attention to its VPC frequencies for several years, and had no idea that RadioLink was using them until 2003 or 2004. Administrative proceedings with the FCC ensued. In 2005, the FCC modified RadioLink's license to exclude Telesaurus's five frequencies and include five replacement frequencies.

## B.    Initial Stages and Appeal

Telesaurus initiated this lawsuit in 2007, alleging that RadioLink had used Telesaurus's frequencies without permission from 1999 through 2005, thus supposedly violating the common carrier provisions of the Federal Communications Act (FCA) and making RadioLink "liable to the person or persons injured thereby for the full amount of damages sustained in consequence of" the violations. 47 U.S.C. § 207. Telesaurus also asserted state-law claims for conversion, interference with prospective economic advantage, and unjust enrichment. According to Telesaurus's counsel at a later hearing, Telesaurus suffered no actual losses from RadioLink's actions, but rather sought damages

measured by RadioLink's profits from using the VPC frequencies, similar to equitable disgorgement:

> [The Court]: . . . [I]n concrete terms, what are your client's injuries and how do you credibly quantify them?
>
> [Counsel for Telesaurus]:  Well, Your Honor, I mean, we have a potential, as we said, unjust enrichment case on the state law side, potential lost profits that my clients could have had.
>
> [The Court]:  What's your — I mean, it's intuitively hard for me to see an unjust enrichment or loss of business.  I thought your claim was about frequency interference that was degrading your client's business operation.  Is that wrong?
>
> [Counsel for Telesaurus]:  Yeah.  I think it's more of a utilizing frequencies that they own.
>
> [The Court]:  So it didn't interfere with your — it didn't interfere with your guy's communications through any of its customers?
>
> [Counsel for Telesaurus]: I don't believe so.  I think based on my understanding from my client, no, that wasn't the issue.
>
> [The Court]:  Okay.  I guess I just assumed that when I read this that with two people using the same frequencies, that there's going to be interference and your communications don't go through and your customers get mad and they fire you.  And none of that?
>
> [Counsel for RadioLink]:  Different case, Your Honor.
>
> [The Court]:  So this is just a matter of he made money and you want to get it from him?
>
> [Counsel for Telesaurus]:  He utilized something that was ours.
>
> [Counsel for RadioLink]:  They claimed they own the frequency.  The FCC licensed the frequency to Radiolink.  Radiolink uses the frequency.  They say well, whatever

money you made we're entitled to it.  We don't agree with that theory, but that's their theory.

[The Court]:  This is changing my perception of this case. Because I thought your guy was suffering degradation of his own communications.  But if it's just a matter of, I have a monopoly, you are using this frequency and I want all your profits, that's a different situation.

So your damage case doesn't in any way — well, how would you come about your damage case?

[Counsel for Telesaurus]:  I think we would want to find out what the — what type of profits that they had made based on their use of the frequency, things like that. . . .

(Doc. 115 at 23–25.)

RadioLink eventually moved to dismiss the action, arguing that it was not a common carrier as a matter of law and therefore § 207 could not apply.  RadioLink also argued that Telesaurus's state-law claims were preempted by federal law.

The Court granted RadioLink's motion, holding that the FCC's designation of RadioLink as a private mobile radio service (through the "PMRS" notation on RadioLink's license) was entitled to deference, and RadioLink was therefore not a common carrier as a matter of law.  The Court also held that the FCA preempts the state-law claims.  Given these outcomes, the Court concluded that "Telesaurus's stumble is not one from which it can recover and return to the race.  It would be fruitless to let Telesaurus try again by allowing further amendment of its complaint.  The complaint and the action will be dismissed with prejudice."  (Doc. 91 at 9–10.)

On appeal, the Ninth Circuit upheld the state-law preemption conclusion, but not the common carrier conclusion, holding that the notation on RadioLink's license was entitled to no deference, and in any event, common carrier status turns on the services a licensee actually provides to its customers, not on what its license says.  *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1005–06 (9th Cir. 2010).

The Ninth Circuit's order therefore established the following elements for common carrier status:

> [A] mobile service provider such as RadioLink qualifies as a "common carrier" under the FCA only to the extent it is "engaged in the provision of a service" that is: (1) for profit; (2) interconnected (or pending interconnection) with the public switched network; and (3) available to the public or other specified users.

*Id*. at 1004.  The Ninth Circuit went on to state, "Telesaurus's complaint plausibly alleges that RadioLink is a for-profit endeavor, thus satisfying [the first element of] the definition of the common carrier."  *Id*. at 1005.  The complaint, however, did not allege the second and third elements.  Given that the Ninth Circuit's decision for the first time distilled those elements as such, the Ninth Circuit remanded to give Telesaurus an opportunity to amend as to those elements.

### C.   Between Appeal and Amendment

The Ninth Circuit announced its decision on October 8, 2010, and the mandate issued on January 5, 2011.  (Doc. 118.)  The following day, this Court gave Telesaurus 21 days (until January 27, 2011), to file an amended complaint.  (Doc. 119.)

During those 21 days, Telesaurus's principal, Warren Havens, conferred with Telesaurus's counsel about the form of the amended complaint.  Havens received the following advice from counsel:

> [U]ltimately we need to use the Ninth Circuit's decision as our road map for how we plead our 206-207 claims.  In particular, we need to allege facts to support the allegations that Radiolink provided a service that was: (1) for profit; (2) interconnected (or pending interconnection) with the public switched network; and (3) available to the public or other specified users.  The Ninth Circuit suggested in its decision that we properly pled the first element, so we really need to focus on the last two.  This need not involve a lengthy factual exposition — 4-5 carefully worded paragraphs will do.  As long as the allegations aren't conclusory, and have factual

support, they ordinarily will pass muster for purposes of
surviving a motion to dismiss.

(Doc. 248 at 3.)   There is no indication that Telesaurus performed any investigation
regarding the second and third elements.

### D. Telesaurus's Second Amended Complaint

Telesaurus filed its second amended complaint on January 27, 2011, naming as
defendants RadioLink, Randy Power (RadioLink's principal), and Patricia Power
(Randy's ex-wife and former business partner).   Telesaurus named Randy and Patricia
Power because,

> [d]uring the period involved in this Complaint, as shown in
> public FCC records, and public advertising, and otherwise on
> information and belief, Defendants Mr. and Mrs. Powers [*sic*]
> held certain FCC licenses in their respective names, and
> jointly owned, controlled, and operated Radiolink as well as a
> number of differently-named wireless businesses as affiliates
> or DBAs of Radiolink.   Upon information and belief, these
> businesses were operated as a common business enterprise
> and will be herein collectively referred to as "Defendants."

(Doc. 120 ¶ 4.)  In other words, Telesaurus set up its complaint such that every action of
every entity related to Randy and Patricia Power and their telecommunications business
would be attributed to all of them.

Telesaurus then alleged the second element of the common carrier test —
"interconnected (or pending interconnection) with the public switched network" — as
follows:

> Defendants' Services utilize direct or indirect connections
> (through automatic or manual means) which permits the
> transmission of messages or signals between points in the
> "Public Switch Network" and a Commercial Mobile Radio
> Service provider, and, by such, Defendants' customers are
> capable of communicating to or receiving communications
> from other users of the Public Switched Network all or part of
> the time.

(*Id*. ¶ 8.)  This simply repeats the regulatory definition of "interconnected."  *See* 47 C.F.R. § 20.3.  Telesaurus offered no specific facts to back up this assertion.

Telesaurus alleged the third element — "available to the public or other specified users" — in a similarly conclusory fashion:

> Defendants' Services are available to the public, or to such classes of eligible users as to be effectively available to a substantial portion of the public.  Said availability utilizes generalized offerings on nondiscriminatory terms and fees to the public without restriction on who may receive such services.

(*Id*. ¶ 9.)  This recites the statutory definition of "available to the public."  *See* 47 U.S.C. § 332(d)(1).

### E.   RadioLink's Proposed Rule 11 Motion

On February 8, 2011, RadioLink served a Rule 11 motion on Telesaurus (*see* Doc. 226-1), but pursuant to Rule 11(c)(2)'s 21-day "safe harbor," RadioLink did not at that time file the proposed motion with the Court.

RadioLink's motion argued that Telesaurus's allegations in the amended complaint regarding elements two and three of the common carrier test were demonstrably baseless.  RadioLink therefore asserted that Telesaurus had violated Rule 11(b)(3), which states:

> By presenting to the court a pleading, written motion, or other paper — whether by signing, filing, submitting, or later advocating it — an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> * * *
>
> . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

- 7 -

Included with the proposed motion was a declaration from Randy Power.  (*See* Doc. 226-1 at 10–14.)  In that declaration, Power specified in detail how RadioLink's repeater site does not have and has never had the necessary equipment to interconnect with the public switched network.  He also asserted that RadioLink does not make and has never made its services available to the public, but instead provides contract service only to "internal dispatch" customers such as police departments, fire departments, school districts, and towing companies.

On February 9, 2011 (one day after RadioLink served its Rule 11 motion on Telesaurus), RadioLink filed a motion to dismiss Telesaurus's amended complaint.  (Doc. 123.)  The motion argued that Telesaurus's allegations in support of elements two and three of the common carrier test were no more than recitations of the applicable law, and therefore conclusory and incapable of sustaining the complaint.  RadioLink alternatively moved for summary judgment based on (what the Court now knows is) the same Randy Power declaration attached to the proposed Rule 11 motion.  (Doc. 124.)

**F.    Telesaurus's Response to the Proposed Rule 11 Motion**

On February 16, 2011, counsel for Telesaurus e-mailed a letter to counsel for RadioLink.  The letter offered in pertinent part,

> We have received and carefully reviewed your February 8 letter and associated proposed Rule 11 Motion, as well as your request that we dismiss Plaintiffs' Second Amended Complaint.  We decline your request [to withdraw the second amended complaint] . . . .

> * * *

> Your Motion is premised upon the contention that Radiolink is not a common carrier, and, in particular, your assertion that Radiolink does not provide interconnected service.  We dispute this contention, based upon the results of our investigations prior to the filing of our Second Amended Complaint.

> * * *

Our investigations revealed that defendant Randy Power (who as you may know is identified as the sole director and officer of Radiolink in filings with the Arizona Secretary of State) holds at least three active FCC licenses identified on their face as being associated with "interconnected" and "common carrier" service.

\* \* \*

Our investigations also identified a number of other licenses obtained by Randy and/or Patricia Power, including common carrier forms under the name "Radiolink," described as associated with "common carrier" service and regulatory status, and which also appear to involve late-filed assertions of status changes.  These or some of these licenses appear to be ostensibly no longer held by them, but held by them for at least part of the time period relevant to the Second Amended Complaint.

\* \* \*

We had assumed that you were familiar with the section 208 Complaint (47 U.S.C. § 208 [which applies only to common carriers]) against Mr. Power that resulted in the FCC concluding all of the following:

- "We find that Power violated the terms of his [FCC] License by the *unauthorized carriage* of mobile traffic;"

- "We find that Power has carried mobile traffic *in violation of his license*, and thereby violated the Act and the rules."

\* \* \*

With particular respect to Radiolink's common carrier status, we also note that Radiolink holds a license for a transmitter location at White Tank Mountain in Litchfield Park, Arizona, the very same location associated with Randy Power's active common carrier licenses. . . .   Finally, our preliminary investigation has revealed that Radiolink has failed to obey certain basic corporate formalities (by failing to make required filings with the Arizona Secretary of State), which supports our allegation (in paragraph 4 of the Second Amended Complaint) that "Defendants Mr. and Mrs. Powers

[*sic*] held certain FCC licenses in their respective names, and jointly owned, controlled, and operated Radiolink as well as a number of differently-named wireless businesses as affiliates or DBAs of Radiolink . . . *as a common business enterprise*."

\* \* \*

[In light of the motion to dismiss's alternative request for summary judgment,] we would appreciate it if you would, by the end of this week, identify dates on which we can take the depositions of Randy Power, Patricia Power and a Rule 30(b)(6) representative of Radiolink, with the relevant documents produced in advance, directed to the current issues in dispute including: (i) the nature of the all of [*sic*] telecommunications operations of each of these persons/entities and time periods involved; (ii) the identity of the FCC licenses held by each of these persons/entities, and of the various licensing applications and pleadings involved, including drafts; (iii) the circumstances surrounding Defendants' application for these FCC licenses; (iv) the circumstances surrounding Radiolink's corporate existence, including its compliance with corporate formalities; (v) the identity of any Radiolink affiliates; and (vi) the nature of the telecommunications system operations, marketing, and services of Defendants and of any entities affiliated with any of the Defendants.

(Doc. 126 at 8–12 (emphasis in original).)

On February 18, 2011, counsel for RadioLink sent an e-mail to counsel for Telesaurus in response to Telesaurus's letter. In relevant part, RadioLink's counsel informed Telesaurus's counsel that RadioLink would not withdraw its Rule 11 motion and would not consent to the requested discovery:

[A]fter reviewing all of the matters set forth in your letter, and giving full weight to your arguments, there is no legal or factual basis for the allegation that our clients are properly sued as a "common carrier" . . . and the unfiled Rule 11 Motion remains in effect.

With respect to your request for discovery, our clients will respectfully decline. For reasons fully explained in Mr.

Power's declaration, there is simply no factual basis for the assertion that RadioLink operates an Interconnected Service as defined in the applicable FCC Rule, and no amount of discovery can change that objective reality.  Nor may a demand for discovery be premised on your alternative theories, which are based upon unsupported conjecture and innuendo and, indeed, demonstrate the extent of your client's failure to have conducted an appropriate pre-filing investigation.

(Doc. 248 at 26.)

## G.    Development of a Focused Discovery and Summary Judgment Procedure

Considering RadioLink's motion to dismiss/motion for summary judgment, the Court declined to move directly to summary judgment.  Nonetheless, upon reviewing Randy Power's declaration in support of early summary judgment, the Court determined that Telesaurus's allegations were indeed conclusory but (a) the information needed to sustain them was conceivably entirely within RadioLink's control, and (b) Power's declaration showed that the viability of elements two and three could probably be easily tested.

At a hearing on the motion to dismiss/motion for summary judgment in April 2011, the Court stated that "those facts going to 'available to the public or other specified users,' or 'interconnected to the public switched network,' appear to be readily amenable to quick economical and definitive discovery and resolution."  (Doc. 143 at 5.)  The Court surmised that the parties "might need some depositions.  But most of this would appear . . . to be paper discovery."  (*Id*. at 17.)  Referring to RadioLink's transmitter site, counsel for Telesaurus added: "I could envision a site inspection by an expert.  I believe there's going to be some disagreement as to what the equipment can or can't do . . . during this five- or six-year period [in which RadioLink allegedly violated Telesaurus's rights]."  (*Id*. at 18.)

Based on the discussion at the hearing, the Court denied RadioLink's motion to dismiss and instead ordered the parties to develop a discovery plan focused only on the

second and third elements of the common carrier test, to be followed by cross-motions for summary judgment on those elements.  (Doc. 138.)  The parties apparently attempted to develop a scheduling order but reached some sort of impasse (*see* Docs. 139–42), and the discovery plan lay dormant for several months as the parties litigated collateral issues (*see* Docs. 174, 175).  A scheduling order was finally put in place in November 2011, requiring RadioLink to file a motion for summary judgment regarding interconnectedness and availability to the public.  That motion was to include

> a written description in the form of a functional diagram of RadioLink's operating system during the period from 1999 through the time in 2005 when its frequencies were changed, with sufficient detail to allow a third party, including [Telesaurus]'s expert witness, if any, to determine whether the system was interconnected with the public switched network . . . .

(Doc. 189 at 2.)  The scheduling order went on to specify:

> During January, 2012, (A) Defendants will permit inspections by duly qualified experts, at mutually convenient dates as follows: (i) Site inspection of RadioLink's [repeater] facility, and (ii) Inspection of RadioLink's repeater equipment in operation during the relevant time period, whether or not still operating; and (B) Plaintiff shall conduct the deposition of Randy Power at a date and time convenient to all parties, limited to the issues raised in Defendants' Motion for Summary Judgment.  Plaintiff reserves the right to request additional discovery concerning the issues raised by Defendant's Motion for Summary Judgment pursuant to Rule 56(d) Fed.R.Civ.P. following its review of the Motion, and Defendants reserve the right to object to any such requests.

(*Id.*)

Telesaurus was required to obtain new counsel in the midst of summary judgment briefing, causing delays.  In the end, Telesaurus deposed Randy Power, but "decided to forgo [an] inspection [of RadioLink's repeater site] since none of the equipment RadioLink used during the relevant time period remains at the site."  (Doc. 223 at 2.)

Telesaurus cited nothing in support of the assertion that none of the relevant equipment remains in place.

## II.   ANALYSIS

### A.   Legal Standard

As noted above, Rule 11 imposes an obligation on parties to perform a reasonable inquiry before filing any paper, such as Telesaurus's second amended complaint:

> By presenting to the court a pleading, written motion, or other paper — whether by signing, filing, submitting, or later advocating it — an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> * * *
>
> . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Fed. R. Civ. P. 11(b)(3).  If a Rule 11 violation is found, whether to impose sanctions is within the Court's discretion.  Charles Alan Wright et al., 5A *Federal Practice and Procedure* § 1336.1 (3d ed.) ("The 1993 amendment to Rule 11 returned the imposition of sanctions to the discretion of the district judge . . . .") (hereinafter, "*Wright & Miller*").

### B.   Timeliness

Telesaurus argues that RadioLink's motion is not procedurally proper because RadioLink served it in February 2011 but did not file it until May 2012.  Rule 11, however, contains no deadline for filing a motion.  A motion must not be filed within 21 days of its service on the opposing party, but the rule says nothing about how long the movant may wait to file the motion after the 21 day safe harbor has expired.[1]

---

[1] To give effect to the safe harbor provision, which permits a party to withdraw a supposedly offending paper, courts have held that service of the motion must take place such that the opposing party actually receives 21 days to withdraw the paper.  Thus, for example, if the supposedly offending paper is a complaint and the Court dismisses that

1      Numerous courts have held that deciding an actually filed Rule 11 motion may be
2  deferred until disposition of the case.  *See*, *e.g.*, *Lichtenstein v. Consol. Servs. Group,*
3  *Inc.*, 173 F.3d 17, 23 (1st Cir. 1999); *Baker v. Alderman*, 158 F.3d 516, 521–22 (11th Cir.
4  1998); *Mitchel v. City of Santa Rosa*, 695 F. Supp. 2d 1001, 1013 (N.D. Cal. 2010); *In re*
5  *New Motor Vehicles Canadian Export Antitrust Litig.*, 236 F.R.D. 53, 57 (D. Me. 2006).
6  This case is materially indistinguishable from such cases.  As the development of the
7  focused summary judgment procedure demonstrates, had RadioLink filed its Rule 11
8  motion soon after the safe harbor period expired (which would have been during the
9  pendency of RadioLink's motion to dismiss), the Court would have deferred deciding the
10  motion for sanctions until resolving the motions for summary judgment resulting from
11  the focused discovery.  Accordingly, RadioLink's motion is timely.

12      **C.    Merits of the Motion**

13      Telesaurus treated the Ninth Circuit's reversal on the leave-to-amend issue as an
14  invitation to amend regardless of the substance of the amendment.  From the Ninth
15  Circuit's decision, Telesaurus understood the elements it must allege in its amended
16  complaint, and it simply alleged them with nothing more.  Telesaurus made no attempt to
17  investigate whether those elements could be satisfied.

18      The fact that RadioLink denied the early discovery requested in Telesaurus's letter
19  responding to the Rule 11 motion is of no consequence.  "Rule 11 creates and imposes on
20  a party or counsel an affirmative duty to investigate the law and facts *before* filing."
21  *Moser v. Bret Harte Union High Sch. Dist.*, 366 F. Supp. 2d 944, 950 (E.D. Cal. 2005)
22  (emphasis added).

23      **1.    Telesaurus's Claimed Justifications**

24      In the Ninth Circuit, a complaint which *turns out* to be well-founded is not
25  sanctionable even if it can be shown that the attorney failed to conduct a reasonable pre-

26  complaint during the safe harbor period, then no Rule 11 motion is possible because the
27  party against whom it would have been brought can no longer withdraw the complaint.
   *See* 5A *Wright & Miller* § 1337.2.  That is not the case here.
28

filing investigation. *In re Keegan Mgmt. Co. Sec. Litig.*, 78 F.3d 431, 434 (9th Cir. 1996) ("An attorney may not be sanctioned for a complaint that is not well-founded, so long as she conducted a reasonable inquiry. May she be sanctioned for a complaint which *is* well-founded, solely because she failed to conduct a reasonable inquiry? [¶] We conclude that the answer is no." (emphasis in original)).[2] But that is not the case here. Telesaurus produced nothing at summary judgment to substantiate any of the elements of common carrier status.

Moreover, Telesaurus failed to support the claims made in its letter responding to RadioLink's Rule 11 motion. Those claims were, at best, only indirectly relevant to the disputed elements of common carrier status. But in any event, as discussed below, each of them turned out to be baseless — further evincing bad faith.

### a. Randy Power's Other Licenses

- "[D]efendant Randy Power (who as you may know is identified as the sole director and officer of Radiolink in filings with the Arizona Secretary of State) holds at least three active FCC licenses identified on their face as being associated with 'interconnected' and 'common carrier' service[.]"

This assertion is readily demonstrable, if true. At summary judgment, however, Telesaurus produced nothing to substantiate this assertion. It was not alleged in good faith.

- "[O]ther licenses obtained by Randy and/or Patricia Power, including common carrier forms under the name 'Radiolink,' described as associated with 'common carrier' service and regulatory status[.]"

At summary judgment, it became clear that Telesaurus based this allegation on certain FCC forms that Randy and Patricia Power allegedly filled out in 2001. As explained more thoroughly in this Court's order granting summary judgment (Doc. 224 at

---

[2] *Keegan* essentially disagrees with the Third Circuit's Rule 11 maxim, "A shot in the dark is a sanctionable event, even if it somehow hits the mark." *Garr v. U.S. Healthcare, Inc.*, 22 F.3d 1274, 1279 (3d Cir. 1994) (internal quotation marks omitted); *compare Keegan*, 78 F.3d at 435 n.1 (disagreeing with the *Garr* approach).

11–12), Randy and Patricia Power separately filled out certain forms requiring them to characterize RadioLink's service by selecting from among fifteen possible categories. "Private mobile radio service" and "commercial mobile radio service" were not among the fifteen choices. The categories that the Powers ultimately selected do not necessarily imply anything about RadioLink's common carrier status or lack thereof. (*See id*.) Accordingly, this allegation did not provide a good faith basis on which to base the second amended complaint.

### b. FCC Proceedings Against Randy Power

- "We find that Power violated the terms of his [FCC] License by the unauthorized carriage of mobile traffic; [¶] We find that Power has carried mobile traffic in violation of his license, and thereby violated the Act and the rules."

This quote comes from *In re Marzec*, 15 F.C.C. Rec. 4475 (2000). For some time, the FCC did not require base station operators (such as Power) to obtain FCC permission to carry mobile users because such users needed to obtain their own licenses. However, in 1992 the FCC reversed its policy, putting the burden on the base station operator to obtain a license if they intended to carry mobile traffic. Power had been carrying mobile traffic before the FCC rule change, and never sought to update his license after the change. His failure to do so led to conflict with another licensee on the same frequency, Franya Marzec. Marzec brought an enforcement proceeding in front of the FCC and prevailed in establishing that Power had carried unauthorized mobile traffic in violation of his license, although Marzec failed to establish that Power intended to cause harm through his actions. *See id*.

The only possible use Telesaurus could make of the *Marzec* proceedings is to draw an inference that one who has exceeded the scope of his FCC license previously did it again in this case. But in the context of this case, such an inference is not reasonable.

Telesaurus seeks to infer that Randy Power caused RadioLink to exceed its private mobile license by offering its services to the public at large, including telephone interconnection — thus making RadioLink a *de facto* commercial service, and therefore a

common carrier.  However, one equipped to operate as a commercial service has no incentive to hide that fact.  Rather, he has every incentive to hold himself out as such to the public — which itself should produce publicly available evidence.  Telesaurus has produced no such evidence.  Thus, any inference from the *Marzec* case does not rationally transfer to the circumstances of this case.

### c.      The White Tank Site

- "Radiolink holds a license for a transmitter location at White Tank Mountain in Litchfield Park, Arizona, the very same location associated with Randy Power's active common carrier licenses[.]"

Telesaurus produced nothing at summary judgment to support the assertion that Randy Power has active common carrier licenses operating from the White Tank Mountain site.  Accordingly, there is no reason to believe this allegation was made in good faith.

### d.      RadioLink Corporate Formalities

- "Radiolink has failed to obey certain basic corporate formalities (by failing to make required filings with the Arizona Secretary of State)[.]"

Again, Telesaurus offered nothing to substantiate this.  The allegation was not made in good faith.

### 2.      Actual Course of Proceedings

The actual course of summary judgment proceedings further supports the conclusion that, from the start, Telesaurus had no reasonable basis to file the second amended complaint.  Specifically, even after receiving an extension of time to do so, Telesaurus chose not to inspect RadioLink's repeater site, claiming that "none of the equipment RadioLink used during the relevant time period remains at the site."  (Doc. 223 at 2.)  Yet Telesaurus repeatedly claimed that the site continues to be used for common carrier operations, if only through Randy Power's other licenses, or through tenants.  Such inconsistent positions evince a lack of good faith.

In addition, through its own efforts to uncover BLM records regarding RadioLink's transmitter site, Telesaurus learned the names of many of RadioLink's

- 17 -

current and former customers.  (*See* Doc. 224 at 16.)  Telesaurus's response letter to RadioLink's proposed Rule 11 motion shows that it was aware of the BLM records as of that time.  (*See above*, Part II.C.1.c.)  Telesaurus could have simply asked the customers revealed on these records how RadioLink solicited those customers' business (which is relevant to the third element of the common carrier test) and whether the customers ever had the ability to place a phone call through RadioLink's system (addressing the second element).  Telesaurus's failure to pursue such obvious sources of relevant information further supports a finding of bad faith.

In addition, in its summary judgment briefs, Telesaurus repeatedly advanced an argument that the Ninth Circuit had rejected.  The Ninth Circuit unmistakably held that common carrier status turns on the service the licensee actually provides:

> Telesaurus argues that Radiolink must be deemed to be a common carrier because it was using the VPC Frequencies, which the FCC designated for use only by commercial mobile services.  We reject this tautology.  As explained above, the definition of 'commercial mobile services' does not turn on the nature of the frequencies being used, but rather on whether the service being provided meets certain criteria.

*Telesaurus*, 623 F.3d at 1005.  Nonetheless, Telesaurus adopted a more elaborate — although no less tautological — version of this argument as its primary basis for opposing summary judgment.  (*See* Doc. 209 at 5–11; Doc. 223 at 3–7.)  Telesaurus's attempt to resurrect the notion that RadioLink must be a common carrier because the disputed frequencies were allocated for common carrier use shows that, from the outset, Telesaurus justified this lawsuit purely based on its view of the law and not on any reasonable factual investigation.  After the Ninth Circuit rejected the argument, Telesaurus's continuing reliance on it could not provide a good faith basis for pursuing this action further.  Yet Telesaurus continued to litigate based on nothing more than labels and conclusions.  Such behavior violates Rule 11.  Telesaurus failed to perform "an inquiry reasonable under the circumstances" and to possess "evidentiary support" for its

factual contentions or to identify those contentions that would "likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b), (b)(3).

### 3. Telesaurus's Damages Theory

Telesaurus's damages theory sheds light on its bad faith in continuing this litigation after remand. From its own admissions at the outset of this case, Telesaurus did not have any actual damages compensable under 47 U.S.C. § 207. At best, only its already rejected state law claims might have provided a good faith basis to continue the litigation.

It has long been established that damages against common carriers under FCA §§ 206–07 are limited to actual damages incurred. For example, the FCC in 1965 faced a complaint from a telephone salesman who argued that the telephone company had routinely discriminated against him (in violation of its common carrier duties) by charging him for long-distance calls in a manner that did not accord with its posted rates and policies. *Barnes v. Ill. Bell Tel. Co.*, 1 F.C.C.2d 1247, 1247–51, 1259–60 (1965). The salesman tried to produce a measure of his damages but failed to do so with adequate certainty and therefore argued that his only burden was to prove that the telephone company discriminated against him. *Id.* at 1260–64. The FCC rejected this argument: "The fact that a complainant has shown that a common carrier has, by certain acts or omissions, subjected itself to . . . corrective proceedings by the [FCC] is not a basis for recovery of pecuniary damages without a showing of specific pecuniary injury." *Id.* at 1265.

In some cases, consequential damages can comprise sufficient injury. *See In re Edwards*, 74 F.C.C.2d 322, 327–28 (1979) (common carrier wrongfully refused to permit a certain telephone device to be installed on plaintiff's customer's premises; plaintiff incurred engineering expenses to convince the customer that the telephone device was permissible, and incurred interest on a loan taken out to cover for the customer's refusal to make payments on the device in light of the common carrier's actions; such damages

held recoverable).  Loss of business one would have gained but for the common carrier's violations is also potentially compensable.  *See RCA Global Commc'ns, Inc. v. W. Union Tel. Co.*, 521 F. Supp. 998, 1004 (S.D.N.Y. 1981) (common carrier carried certain traffic that it was required to allocate to other carriers instead; lost profits to other carriers held compensable).

Telesaurus, however, conceded early on that it lost no business, suffered no interference, and otherwise incurred no compensable expenses.  Telesaurus simply wanted payment from RadioLink for "utiliz[ing] something that was ours."  (*See above*, Part I.B.)  Nothing in § 207 would support damages liability for RadioLink without damages in fact to Telesaurus.

### D.    Sanctions

A Rule 11 violation has been found.  This Court therefore has discretion whether to impose sanctions.  RadioLink's requested sanctions — attorney's fees and costs incurred fighting the second amended complaint — are "warranted for effective deterrence."  Fed. R. Civ. P. 11(c)(4).  Groundless, speculative litigation such as that exhibited by Telesaurus brings the legal system into disrepute and must be discouraged.

### E.    Remaining Issues

#### 1.    Status of Current Counsel

Nothing in this order should be construed as ascribing blame to Telesaurus's current counsel.  Telesaurus's lead counsel first appeared in the middle of summary judgment proceedings.  They were not involved in the decision to file the second amended complaint.  Further, it appears that Telesaurus's local counsel (who have been involved from the beginning) performed no duties beyond the *pro forma* duties that often fall to local counsel.  Accordingly, no fault is ascribed to local counsel.

#### 2.    Liability of Warren Havens

RadioLink has argued for personal Rule 11 liability against Telesaurus's principal, Warren Havens.  Havens may have directed Telesaurus's actions, but he is not a party.  RadioLink's argument therefore raises a veil-piercing issue that must be litigated

separately, if RadioLink chooses, after obtaining the judgment that this order will grant against Telesaurus.  It is not an appropriate question to litigate in these proceedings.

IT IS THEREFORE ORDERED that RadioLink's Motion for Rule 11 Sanctions (Doc. 226) is GRANTED.

IT IS FURTHER ORDERED that the Clerk enter judgment in favor of Defendants RadioLink Corporation and Randy Power and against Plaintiff Telesaurus VPC, LLC, also known as Verde Systems, LLC, for attorney's fees of $107,797.50 and non-taxable costs and expenses of $5,346.02, with post-judgment interest at .019% from today's date until paid in full.

Dated this 24th day of August, 2012.

_____
Neil V. Wake
United States District Judge